In the Matter of the Judicial Settlement of the Accounts of ASA BIGELOW KELLOGG, as Executor, etc.

*Court of Appeals, January* 18, 1887.

Affirming same matter, 39 Hun, 275.

1. *Gift. When fraudulent.*—A gift by a testator some five years before his death when his assets far exceeded in value the amount of his debts, in the absence of an actual intent to defraud, is not a fraud upon his creditors, though he died insolvent.

2. *Appeal. What reviewed.*—An appeal to the court of appeals from an affirmance, by the general term, of a surrogate's decree bring's up nothing for review on behalf of a party, who has not appealed to the general term, or who has not excepted to any of the findings or decisions of the surrogate.

3. *Payment.*—Where an attorney, who had made a collection for the testator and was directed to pay the amount to his agent, who afterwards became his executor, deposited the proceeds in the bank in his own name, and sent his check to such agent payable to him, which was received prior to, but on the same day that testator died, and the money drawn thereon two days later and credited in his account with the testator, the delivery of the check at the agent's office to some one in charge there, was a delivery to him and operated as a payment *sub modo;* and, when the money was drawn upon the check, the payment related back to the delivery of the check; and he did not draw the money as executor but as payee of the check, and could not, in law or equity, be compelled to account for the check except by first applying it upon what the testator owed him in current account.

4. *Appeal. Objection first raised.*—An objection to a claim paid by an executor that it was barred by the statute of limitations at the time of payment, if not taken upon the proceeding for the judicial settlement of the executor's account, cannot be raised on appeal.

5. *Executor. Admissions of claim.*—An executor, in admitting a claim against the estate, acts for and represents all the persons interested in the estate, and his admission alone, in the absence of countervailing evidence, fraud or collusion, is sufficient to authorize the surrogate to find that the claim had not been paid and has been kept in life by payments made thereon.

6. *Limitations. Indorsements.*—Indorsements made while a note is in

life, and when against the interest of the holder to make them unless true, are *prima facie* evidence of payments, even though made after the lapse of six years from the date and maturity of the note.

7. *Evidence. Section* 829.—The testimony of an executor, on his judicial settlement, as to a payment made by him to the testator, in order to obtain a credit for the amount, relates to a personal transaction with the testator, and is properly excluded under the provisions of section 829 of the Code.

8. *Appeal. Modification.*—The general term has the right and power, under section 2587 of the Code, to modify a surrogate's decree on a judicial settlement by striking out an erroneous charge and readjusting the account, instead of sending it back for a rehearing before the surrogate.

Appeal from a judgment of the general term of the supreme court, modifying, and affirming as modified, a surrogate's decree on a judicial settlement of the accounts of an executor.

*Arthur H. Smith,* or Sarah A. Kellogg, a legatee, appellant.

*L. Laflin Kellogg,* for Asa B. Kellogg, executor, appellant.

*Matthew Hale,* with *Ward & Cameron,* for Aletha A. Akin, a creditor, respondent and appellant.

EARL, J.—These appeals bring to our attention several matters, which will be separately considered.

1. Prior to 1876 the testator held a note for upwards of $11,000 against the executor, and early in that year he gave it to the executor, who destroyed it. The testator lived until October 10, 1881, when he died insolvent. It was claimed by the testator's widow, who at the accounting was the sole creditor, that, at the time he made the gift of the note, the testator was insolvent, and hence that the gift was fraudulent and void as to her, and that, therefore, the executor, as to her, should be charged with the amount of the note. In the surrogate's court he was so charged; but the general term reversed the decision of the surrogate as

to that item, and relieved the executor from the charge, and, we think, correctly. We do not determine that the surrogate had jurisdiction to enter upon the inquiry whether the gift was fraudulent and void as to creditors, and that, finding it fraudulent and void, he could, on that ground, charge the executor with it, although it was good and valid as against the testator. But passing the question of jurisdiction, we fail to find any evidence in the record that, at the time of the gift, more than five years before his death, the testator was insolvent. After that time, he had left a valuable farm and other assets, in all, far exceeding in amount the value of his debts, and hence the gift, in the absence of an actual intent to defraud, (of which there is no proof or finding,) was not a fraud upon the creditors, and must stand.

2. During the life-time of the testator, for some years prior to his death, the executor was the general agent of the testator, having the general management of his business, and as such he placed in the hands of an attorney, a claim against one Schuyler for collection. Suit was brought upon it, and the attorney, some time before the death of the testator, collected $6,500. From that sum he deducted $500, for his services, and afterwards, on the tenth day of October, while the testator was still alive, he drew his own check upon a New York bank for the sum of $6,000, payable to the order of Asa B. Kellogg, the executor, and sent it to his office in the city of New York, and it was there delivered to some person who was in charge of the office, before the testator's death, with directions to telegraph its delivery to the executor, who was then with the testator at Greenbush. The testator died the same day and, on the twelfth day of October, the executor drew the money on the check, and credited it in his account with the testator. After such credit, there was still a balance due from him to the testator, with which he charged himself on the accounting. The surrogate allowed the $6,000, as a

credit in the account of the executor, as claimed by him. But some of the appellants claimed that that sum should have been charged to the executor as if he had actually received the check after the testator's death, and that the courts below erred in not so charging it. We are of opinion that none of the appellants are in a position to claim any error here as to this item. Mrs. Akin, the widow, neither excepted to the finding of the referee, nor appealed to the general term. The general guardian of the infant appellants appealed, but did not except to any of the findings or decisions of the surrogate, and the special guardian of the infants filed exceptions, but did not appeal to the general term. An appeal to this court from an affirmance by the general term of a surrogate's decree brings nothing here for review, where there was no appeal to the general term, and upon an appeal from a surrogate's decree, no complaint can be made of any finding or decision which has not been excepted to. Code, § 2545. But for a further reason we think there was no error in reference to this item. The money, when collected, was deposited by the attorney in his bank account, and hence he became a debtor to the testator for that sum. He had been directed by the testator to pay it, when collected, to the executor, as his agent. He made such payment by his check, and when the check was delivered at the office of the executor for him to some one there in charge, it was delivered to him, and operated as a payment *sub modo*. He could then treat it as funds in his hands, to be applied, so far as needed, in payment of what the testator then owed him. When the money was drawn upon the check, the payment related back to the delivery of the check. He did not draw the money as executor, but as payee of the check, and he could not, therefore, in law or equity, be compelled to account for the check except by first applying it upon what the testator owed him in current account.

3. At the time of the death of the testator, his widow

held a note for $5,000 against him, given for borrowed money, dated March 17, 1870, upon which there were indorsed the following payments: $350, March 17, 1873; $350, March 17, 1874; $350, March 17, 1875; $300, March 17, 1877; and $200, December 8, 1880. It was proved that the indorsements were made by Mrs. Akin at their dates. The note had been presented to the executor as a claim before the accounting, and admitted by him, and he had made payments upon it. The objection is now made by some of the appellants that the note was barred by the statute of limitations, and that the surrogate erred in ordering the executor to pay it. To this there are several answers. The only objection filed to this note before the surrogate was that it had been paid; and the statute of limitations does not appear to have been mentioned during the trial. The objection that the note was barred should not, therefore, prevail here. The executor had admitted the claim upon the note, and, in doing that, he acted for and represented all the persons interested in the estate. The admission implied that the note had not been paid, and that, by payments made thereon, it had been kept in life: and so, upon the admisssion alone, in the absence of countervailing evidence, fraud or collusion, the surrogate was authorized to find. But proof that the indorsements were made at their dates was sufficient to authorize the surrogate to find, and required him, in the absence of conflicting evidence, to find, that the note had been kept in life by payments actually made. The indorsements were all made while the note was in life, and when it was against the interest of the holder to make them unless true. It matters not that the last two payments were made after the lapse of six years from the date and maturity of the note. It is the fact and that alone, that it was against the interest of the holder to make such indorsements, that makes them *prima facie* evidence of payments. Roseboom *v.* Billington, 17 Johns. 182; Risley

*v.* Wightman, 13 Hun, 163; Hulbert *v.* Nichol, 20 Hun, 454.

4. It is claimed, on behalf of the executor, that his evidence as to the payment of $590 to the testator was improperly excluded, and that he was thus erroneously deprived of a credit for that sum. The payment was a personal transaction with the testator, and hence, under section 829 of the Code, he was incompetent to prove it. We cannot be certain, from an examination of all the evidence that the testator, by his previous examination on behalf of the contestants, had been rendered competent to testify as to the payment, and, in view of the small difference the allowance of this credit would make in the final result, we are constrained to hold that the surrogate did not err in reference thereto.

5. The executor claims that the general term erred in its modification of the surrogate's decree, and that it should have sent the case back to the surrogate for a rehearing. By the finding of the surrogate that the executor was chargeable with his note for upwards of $11,000, the estate of the testator was shown to be solvent, and there was enough to pay all the debts in full. But when the general term, upon the claim of the executor, struck out the note as the charge against him, the estate was shown to be insolvent, and then it appeared that the executor had made an overpayment to one of the creditors, whom he had paid in full. In readjusting the account, the general term disallowed this overpayment, and in this no error was committed. Objection to the overpayment was distinctly made before the surrogate. The general term had power to reverse, affirm, or modify the decree appealed from. Code, §2587. All the elements for the modification appeared in the findings of the surrogate, and it had the power to render such a judgment as the surrogate should have entered. The only error found by the general term was the charge against the executor of his note for upwards of $11,000, and interest, and the only

modification of the surrogate's decree was that made neces-
sary by the disallowance of that charge, and that modifica-
tion the general term was competent to make.

This case is not without some difficulties; but, after
careful consideration, we have reached the conclusion that
the judgment should be affirmed, without costs to any party.

All concur.