(23 App. Div. 107.)

## DECKER et ux. v. ZELUFF et al.

(Supreme Court, Appellate Division, Second Department. December 14, 1897.)

1 EVIDENCE—INDORSEMENTS ON MORTGAGE BOND.
  In an action to foreclose a mortgage, the question whether certain indorsements of interest payments written upon the bond by the mortgagee were made before or after the running of the statute of limitations cannot be determined by the mere indorsements themselves, though dated. In order to make them effective as proof, extrinsic evidence is required.

2. LIMITATIONS—PAYMENTS TO TOLL STATUTE.
  More than 20 years after a bond secured by a mortgage had fallen due, the mortgagor delivered plants, upon an agreement that they should be credited upon the bond, on account of interest; and thereafter such an indorsement was made by the mortgagee. In an action to foreclose the mortgage, *held*, that the debt was saved from the bar of the statute.

48 N.Y.S.—25

3. Void Foreclosure—Rights of Purchaser—Improvements.

In an action to foreclose a mortgage on real property, an heir of the deceased mortgagor was, by mistake, omitted as a party. Subsequently the purchaser at the foreclosure sale, who had gone into possession, brought an action to foreclose the interest of the heir, and secured an allowance for the cost of his improvements. *Held* that, in the absence of any agreement, the plaintiff was, at most, only entitled, in this respect, to an allowance for necessary repairs.

Appeal from special term, Richmond county.

Action by Abraham Decker and Emily J. Decker, his wife, against Sherman Zeluff and Ella Zeluff. From a judgment for plaintiffs, defendants appeal. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George J. Greenfield, for appellants.
Calvin D. Van Name, for respondents.

HATCH, J. By this action a mortgage executed by John K. Zeluff, the father of the defendant Sherman, to Peter Post, bearing date the 11th day of February, 1850, is sought to be foreclosed. On the 25th day of October, 1877, Peter Post assigned the mortgage, and the bond which accompanied it, to Sarah Ann Drake; and on the same day the latter assigned to Frances Jane Post. John K. Zeluff having deceased, leaving the mortgage unpaid, Frances Jane Post, about September 11, 1879, began an action to foreclose the same; resulting in a judgment of foreclosure and sale, which was entered in the county clerk's office of Richmond county on the 22d day of October, 1879. A sale of the premises was had under this judgment, and the same were bid in by Abraham Decker, one of the plaintiffs. This purchase ripened into title by the execution and delivery of a deed. Decker entered into possession of the land, and has since continued, and now is, in possession of the same. By mistake, the defendants Sherman Zeluff and Romine Zeluff were not made parties to the foreclosure action of 1879. They were at that time infants, and remained unrepresented and unaffected by that action, or the judgment rendered therein. The mistake was not discovered until June, 1894, and subsequently the plaintiff procured a quitclaim deed of the interest of Romine Zeluff; leaving now outstanding the interest of the defendant Sherman Zeluff, combined with the inchoate dower interest of his wife. This action seeks to foreclose this interest. The answer, inter alia, sets up payment of the bond and mortgage, and also pleads the statute of limitations. It is not disputed but that the statute has run against the bond and mortgage, and had so run at the time of the foreclosure, in 1879, unless the right of action thereon was saved by certain indorsements, purporting to be payments of interest, appearing upon the bond. The learned court below has proceeded upon the ground that the evidence was sufficient to properly authenticate some of the indorsements as payments upon the mortgage debt; and its determination, sustaining the action and ordering judgment, is based thereon. This ruling provokes an inquiry into the character of the evidence, and its sufficiency. The bond, by its terms, fell due upon the

11th day of February, 1853. If there were no payments, the statute would run against the debt on the 11th day of February, 1873. The first six indorsements upon the bond are without any date as to when they were made. The first one reads, "Received interest on the within bond until February the eleventh, eighteen and fifty-one, eight ten dollars ($18.0)." The other five are in substantially the same form. The next one is dated December 27, 1859, and states that it is for interest due February 11, 1857. There is also indorsed $1 for "helping kill hogs." The next is dated January 1, 1861, and is for $17, and $1 for "killing hogs," for interest due in 1858. The next is dated February 26, 1863, for $17, and for "grafting some trees," $1, for interest due 1859. All of these indorsements were shown to be in the handwriting of Peter D. Post. The other indorsements (six in number) were made by J. Sterling Drake, acting under the direction of Frances J. Post. The first is dated August 26, 1871; the last, June 2, 1879. But all were made at the same time, between June 2, 1879, and the date of the first foreclosure. None of them were made on the dates when they purport to be made, except, possibly, the last one; and they were all made after the death of John K. Zeluff. While one of them appears to be for cash, the evidence is to the effect that no cash was in fact paid, but the indorsements represent the price of certain sweet-potato and other plants delivered at various times. Peter Post died on the 1st day of July, 1879; and while it appeared that all of the indorsements upon the bond made prior to the indorsements placed thereon by Drake were in the handwriting of Peter Post, yet it is quite evident that such indorsements may have all been made by Post after the statute had run. Whether made after or before the running of the statute, the indorsements. of themselves, do not establish. They are mere declarations of the person making them, and are quite as declaratory of a present act as of a past event. Of themselves, they are no more to be regarded as having been made before the statute had run, than after. If made after, they were in favor of the party making them, and not against his interest, as thereby the operation of the statute would be postponed, and the debt saved. In order, therefore, to make them effective as proof, extrinsic evidence was required. Roseboom v. Billington, 17 Johns. 181. This condition the plaintiffs sought to meet by calling a witness to establish transactions between Post and Zeluff from which authority might be implied in Post to make the indorsements. We think this proof insufficient for the purpose. It is quite general, and simply establishes the fact that Zeluff worked for Post, upon his farm, at about the time when some of the indorsements purport to have been made. The witness, however, could identify no date. He never heard the subject of interest, or of the bond and mortgage, spoken of; and the only transaction of which he knew that transpired between the parties was that, when Zeluff finished work, there was a reckoning and settlement between them; but of its details the witness heard and knew nothing. This testimony is far from establishing that there was any agreement made between the parties to apply any payment of cash upon the bond, or of the fact that

any payment was made, or that Zeluff was to be credited with any work as payment thereon. The nearest approach to sustaining the validity of any indorsement has relation to the credit for killing hogs. But of this there is no pretense that any agreement was made, of which the witness heard or knew, to make the indorsement for this work. Its only strength consists in the impression of the witness that it must have been somewhere about the year when the indorsement purports to have been made, and in the fact that Zeluff killed some hogs for Post. This is clearly insufficient to establish that the indorsement was then made, or that any agreement existed to make it. While the probative force of this evidence is insufficient to give vitality to the indorsements themselves, yet it is quite clear that the witness testified with candor respecting the transactions, and gives such evidence of dealings between the parties as renders the fact of the indorsements, so far as they relate to work done by Zeluff, quite consistent with their relations, creating a condition where one act naturally resulted in the other. We come, therefore, to a consideration of the further testimony, which is somewhat strengthened by the fact that there was nothing forced or unnatural in the relation of the indorsements to the acts of the parties. The witness Marsters testified that he knew Zeluff intimately, and frequently talked with him; that about a year before Zeluff died, which was on June 11, 1879, he told him that he had sold Mr. Post potato plants, and that he had applied it to interest that he owed him. The witness was further asked if he spoke of the bond and mortgage that Post held against him, and he answered "that he wanted to pay interest on it; yes, sir. Q. With what? A. With the price of the plants that Mr. Post got of him." We think that this testimony establishes with reasonable certainty that Zeluff recognized the existence of the bond and mortgage as a valid obligation as late as 1877, and that he delivered plants, the proceeds of which, with his assent, were to be credited upon the mortgage debt. Such evidence is sufficiently explanatory of the circumstances, and furnishes the necessary extrinsic proof of an agreement to pay, and of an application of payment upon, the debt, sufficient to save it from the bar of the statute, within the rule laid down in Mills v. Davis, 113 N. Y. 243, 21 N. E. 68. Although Post at this time did not own the bond and mortgage, yet it is quite evident that it was this security which was referred to, and there is no pretense that there was any other debt than was represented by this bond and mortgage. The identity of the instruments, and of payment upon them, is sufficiently established. Nor was it required that the indorsement should be made upon the bond at the time when the plants were delivered and the agreement made. The essential thing was the agreement, and, that being established, it operated as a payment at that time, and saved the debt from the bar of the statute, although the indorsement was made thereafter.

We agree with the learned court below that the case is close, but we are quite convinced that the evidence was sufficient to support the finding of payment made by the court. The judgment, however, must be modified, in so far as it provides for an allowance to the

plaintiff for the cost of his improvements made upon the premises. The first foreclosure was absolutely void, as to this defendant. As to him, the plaintiff stood in the relation of a tenant in common; and therefore he cannot be allowed for his improvements, in the absence of an agreement, expressed or implied, with his co-tenant. There is no pretense of any agreement, and therefore the most to which plaintiff is entitled in this respect is an allowance for necessary repairs upon the property. Scott v. Guernsey. 48 N. Y. 106; Taylor v. Baldwin, 10 Barb. 582. The judgment should be modified in this respect, and as modified affirmed. All concur.