S. H. REGAN, Appellant, v. E. H. WILLIAMS, Respondenc.

St. Louis Court of Appeals, April 23, 1901.

1. **Note, Promissory**: PART OF PURCHASE PRICE: ASSUMPTION OF MORTGAGE DEBT: SURETY. The sale of the land by the original mortgagor, and the assumption of the incumbrance by the purchaser as part of the purchase money converted the purchaser into the principal debtor as to the incumbrance, and the seller into a surety.

2. ———: EXTENSION OF TIME: NO RELEASE THEREBY. The contract between the original holder of the note and the purchaser of the land on which there was a mortgage to secure it, for an extension of time in which to pay the note, being without consideration was not binding, and therefore did not release defendant as a surety.

3. ———: PRINCIPAL AND SURETY: EXTENSION OF TIME: . NOT A RELEASE OF SURETY, WHEN. Payments made by the principal or by one of several obligors before the debt is barred, will stop the statute. This rule is based upon the principle that persons who jointly bind themselves are all liable to the promisee by virtue of their original agreement, so that performance, or part performance by one, is the act of all.

4. ———: ———: PAYMENTS: STATUTE OF LIMITATIONS. The maker of a note, given for part of the purchase price, secured by a mortgage on the land purchased, and subsequent grantees of the land, were not joint makers of the note for such grantees only became obligated to pay the note by a later and independent contract between themselves and the maker; and payments of interest made on the note by either of them, could not interrupt the running of the statute in favor of the maker of the note.

5. ———: TRUSTEE IN DEED OF TRUST: STATUTE OF LIMITATIONS. Clearly, the trustee named in the first deed of trust, or possibly his successors in the persons of different sheriffs, were not empowered by Williams, the mortgagor and maker of the note, to

Vol 88 app—37

Regan v. Williams.

bind him at any subsequent date, by crediting the proceeds of a foreclosure on the note, and thereby arrest the running of the statute.

6. ———: CREDIT ON A NOTE NOT SUFFICIENT: STATUTE OF LIMITATIONS. It is not the indorsement of the credit on a note, but the payment in money or its equivalent, that operates as a renewal of a promise, and removes the bar of the statute of limitations.

7. ———: CREDITS: ENTERED WITHOUT KNOWLEDGE OF PAYOR. If credits are entered by the holder without the knowledge or consent of the payor, they are ineffective to check the statute.

Appeal from Greene Circuit Court.—*Hon. James Tilford Neville,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

March 21, 1887, the respondent executed to Timothy Regan, the father of the appellant, a promissory note for $4,000, due two years after date and bearing compound interest at the rate of eight per cent. The note was given for part of the purchase price of some land in Springfield, and to secure it a deed of trust was executed and delivered on the same day, by the defendant and wife, to Charles H. Goffe, trustee for said Timothy Regan, beneficiary. It contained the usual covenants and powers to the trustee to sell in case of default, "and receive the proceeds of the sale, out of which should be paid, first, the costs and expenses of this trust and next all amounts expended for taxes and other purposes, and next amount that may remain unpaid on said note and the interest thereon." November 29, 1887, the defendant and wife conveyed the real estate covered by said deed of trust to the Scott Investment Company, which, with the full consent and approval of the payee, Regan, assumed and agreed to pay the note as part of the purchase

price of the land.   Interest was paid at the end of each year
to March 21, 1890, on which date not only the interest, but
$1,000 of the principal were paid by the Scott Investment
Company.   The following indorsement was put on the note:
"Paid on the within, $1,000 as principal in part, and $320 as
interest to March 21, 1890, and time on balance of note ex-
tended one year."   September 4, 1890, the Scott Investment
Company conveyed the land to A. W. Carey, who likewise as-
sumed and agreed to pay the incumbrance on it.   Interest was
paid to March 21, 1892.   Afterwards, defaults occurred and
on the seventeenth day of May, 1894, the trustee Goffe, at the
request of the beneficiary, sold the property under the deed of
trust for $2,000, and after deducting the expenses of the sale
credited the remainder, $1,934.80, on the note.   The present
plaintiff was the owner and holder of the instrument when this
action was commenced, but is affected by whatever equities exist
against the payee.   The defenses are that Williams was released
by extensions given by Timothy Regan, and that the debt was
barred by the statute of limitations.   There is testimony tend-
ing to prove the Scott Investment Company purchased the
property with an understanding with Regan that the time of
payment should be extended, and would not have purchased
without it.   The trial court made a special finding of the facts,
in which it found against the view that there was an agree-
ment as to the extension of time when Williams sold to the
Scott Investment Company.   It also found that the defendant
had neither made, nor caused to be made, any payment on the
note except that the trustee, under the authority of the deed of
trust, credited thereon the amount received at the sale.   This
finding is supported by the evidence.   The action was insti-
tuted on the fourth day of May, 1900.

*McReynolds & Halliburton* for appellant.

(1) Where the mortgagor sells the mortgaged property and the grantee assumes and agrees to pay the mortgage debt, the grantee becomes the principal debtor and the grantor becomes the surety. Wayman v. Jones, 58 Mo. App. 313; American Bank v. Klock, 58 Mo. App. 335; Bank v. Wood, 56 Mo. App. 214; Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291. (2) And the mortgagee is bound after he receives notice of grantee's assumption of the debt to recognize the relation of principal and surety between mortgagor and the grantee. Nelson v. Brown, 140 Mo. 580. (3) Before a surety can be discharged by extension of time for payment of debt in order to discharge surety, the extension must have been made for a valuable consideration and for a definite time. Burrus v. Davis, 67 Mo. App. 210; West v. Brison, 99 Mo. 684. (4) And payment of interest due or part of principal due or an agreement to keep the money for a definite period, party agreeing to pay interest according to terms of note, or paying interest in advance for extension of time, will not release surety although extension was made without his knowledge or consent. Petty v. Douglass, 76 Mo. 70; Hosea v. Rowley, 57 Mo. 357; Coster v. Mesner, 58 Mo. 549; Harburg v. Kumpf, 151 Mo. 16; Owings v. McKenzie, 133 Mo. 323; Bank v. Leavitt, 65 Mo. 562. (5) By the transactions in this case defendant Williams, his grantee, the Scott Investment Company, and its grantee, Carey, all became bound for the payment of the note sued on, and a payment by either one of them took the note out of the statute of limitations. Craig v. Calloway, 12 Mo. 94; Block v. Dorman, 51 Mo. 31; McClurg v. Howard, 45 Mo. 365; Vernon County v. Stewart, 64 Mo. 408; Zervis v. Unnerstall, 29 Mo. App. 474; Kemble v. Logan, 79 Mo. App. 253. (6) Williams, by his sale of the mortgaged real estate and grantee's assumption and agreement to pay the debt making Williams surety and the grantee's principals payment by either

one of the grantees, prevents the running of the statute of limitations as to Williams.　Lawrence Co. v. Dunkel, 35 Mo. 295; Block v. Dorman, 51 Mo. 31.　(7) It is not necessary that Williams should have made the payment himself.　If made by any one having authority or out of proceeds of property pledged as collateral or mortgaged to secure the debt, such payment will take the debt out of the statute.　Bender v. Markle, 37 Mo. App. 234, and authorities cited; Wyatt v. Hodson, 8 Bug. 309.

*Edw. J. White* for respondent.

(1) The indorsements on the note were not competent evidence of payments made, as against the defendant, as it was neither shown that payments were made by him, or anyone by him authorized, or that the credits were made by the payee, when against his interest to make them, i. e., before the statute had run.　2 Sm. Ld. Cas., 908; 1 Greenlf. Evid., sec. 122; Roseboom v. Billington, 17 Johns. (N. Y.) 182; Loewer v. Haug., 20 Mo. App. 163.　"When the statute of limitations is relied on as a defense to a note, the plaintiff should not be permitted to read in evidence credits indorsed on the note, without first proving when the indorsements were made."　Loewer v. Haug, supra; Alston v. State Bank, 9 Ark. 455; Ruddell v. Folsom, 14 Ark. 213.　(2) The extensions of time by the payee, to the different grantees of the property, who had assumed the note, were upon a valuable consideration and sufficient to release the respondent.　"Any valid agreement, made by the mortgagee, with the grantee of mortgaged premises, to extend the time of paying the mortgage debt, without the consent of the mortgagor, discharge the latter."　Nelson v. Brown, 140 Mo. 580; Wayman v. Jones, 58 Mo. App. 313. "An agreement to pay interest for a definite time, after a debt becomes due, and an extension by the creditor and payment by

the principal, discharges the surety." Brandt, Guar. & Sur., sec. 307, p. 415; sec. 312, p. 420; Owen v. Bray, 80 Mo. App. 526. (3) The extensions by Regan, to the different grantees, who had assumed the debt, was sufficient to release Williams. Williams v. Jensen, 75 Mo. 681; West v. Brison, 99 Mo. 686; Traders Bank v. Parker, 130 N. Y. 415; 1 Beech Mod. Law Con., sec. 170. (4) The note sued on is barred as to Williams, by the statute of limitations, as the payments of interest and principal by his grantees, could not toll the statute as to him. Trustees v. Smith, 52 Conn. 434; Cottrell v. Shepard, 57 N. W. Rep. 983; Bank v. Martin, 33 Atl. Rep. 45; Ins. Co. v. Elwell, 70 N. W. Rep. 334; Underwood v. Patrick, 94 Fed. Rep. 468; Zoll v. Carnahan, 83 Mo. 35; Harlock v. Ashbury, 19 Ch. Div. 539; 13 Am. and Eng. Ency. of Law, p. 761, note. "Part payment, by a trustee from the proceeds of a trustee's sale, can not have the effect of arresting the running of the statute in favor of the debtor, on the residue of the debt." Leach v. Asher, 20 Mo. App. 656. "Part payment does not take a debt out of the statute, unless made under such circumstances as to warrant the inference that the debtor thereby recognizes the debt and signified his willingness to pay it." 1 Wood on Lim., sec. 99, p. 278. (5) The foreclosure was not against Williams's property, but against one who had assumed and agreed to pay the debt. Instead of the involuntary credit —even as against the owner—being evidence of a recognition of the debt by Williams and a signification of his willingness to pay same, the very fact of the sale by the trustee is not only evidence of his unwillingness to pay the debt, but that the party primarily liable therefore had also neglected and refused to pay the same. The part payment, sufficient to toll the statute, must have been made "by the debtor in person, or by some one authorized by him to make a new promise in his behalf." Wood Lim., sec. 101, pp. 280-284.

GOODE, J.—The sale of the land by the original mort-gagor, Williams, to the Scott Investment Company, and the assumption of the incumbrance by the latter, converted said company into the principal debtor with reference to the incumbrance, and the defendant into a surety. Wayman v. Jones, 58 Mo. App. 313; Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291. Timothy Regan, who then held the note and knew all about the arrangement, was bound thereafter to recognize said parties in those capacities. Nelson v. Brown, supra.

We must be controlled by the finding of the lower court that there was no agreement for an extension of time of payment, either between Williams and the Scott Investment Company, or between the latter and Timothy Regan, at the time the company purchased the land. When the extension was entered on the note, the entire principal and one year's interest were due. The accrued interest and $1,000 of the principal were paid. It is the law in this State, that a contract like that, for the extension of the time of payment, is without consideration and not binding, so that the creditor may, if he chooses, immediately press for payment despite his agreement to extend; that therefore a surety is not released by such a transaction between the maker and payee. Brown v. Kirk, 20 Mo. App. 524; Owings v. McKenzie, 133 Mo. 323. In some jurisdictions the rule is otherwise where there is not simply an agreement to forbear proceedings to collect, but a formal executed stipulation to postpone the maturity of the instrument. Banson v. Phipps, 87 Texas l. c. 580, and many cases cited. The decisions of the court to which we owe fealty must be followed and we approve the ruling of the learned trial judge that the extension did not discharge the defendant as surety.

II. In reply to the defense that the statute of limitations had run against the note before this action was begun, plain-

tiff asserts that the payments of interest by the Scott Investment Company and Carey to March 21, 1892, prevented the running of the statute, not only in favor of said parties but of the defendant as well. The ruling that payment by a principal will suspend the statute as to a surety, is invoked as applicable, because, by operation of law, the subsequent grantees of the land covered by the deed of trust became principal and the defendant a surety. The proposition contended for is sound enough, generally speaking. Craig v. Calloway, 12 Mo. 94; McClurg v. Howard, 45 Mo. 365; Block v. Dorman, 51 Mo. 31; Vernon Co. v. Stewart, 64 Mo. 408; Bennett v. McCanse, 65 Mo. 194. These payments were made while the note was still alive, and the rule is well established that payments made by the principal, or by one of several joint obligors, before the debt is barred, will stop the statute. But the reason why a payment by the principal stops it as to a surety is not because one is principal and the other surety, but because both are usually joint promisors; that is, the surety is affected by the act of the principal in his capacity as a joint promisor. The idea is that persons who jointly bind themselves are all liable to the promisee by virtue of their original agreement, so that performance or part performance by one is the act of all. Sigourney v. Drury, 14 Pick. 387; Brandram v. Wharton, 1 Bar. & Ald. 463; Atkins v. Tredgold, 2 Bar. & Cresw. 23. The principle only applies where the payment was made by one originally liable. Sigourney v. Drury, supra.

Whether or not the statute ceased to run in favor of the defendant when the payments were made by the subsequent grantees, depends, then, on whether he can be considered a joint promisor with them. Undoubtedly he was not. They were not parties to the note when it was made and only became obligated to pay it by subsequent contracts between themselves and the maker, Williams. Their responsibility, far from resting

on a promise by them given in conjunction with Williams to the payee, Regan, rests exclusively on the promises they made afterwards to assume the debt. In no sense were they joint obligors with him. Their promises neither coincided with his in point of time, nor were made with the same person, nor based on the same consideration. They were separate and distinct undertakings. Maddox v. Duncan, 143 Mo. l. c. 621; Corbyn v. Brokmeyer, 84 Mo. App. 649. Those cases hold that a payment made by one whose promise is collateral, does not interrupt the statute as to the original obligor. The precedents are all against this contention of the appellant. Trustee of Old Almshouse v. Smith, 52 Conn. 434; Cottrell v. Shepard, 86 Wis. 649; Harlock v. Ashberry, 19 Ch. D. 539; Home Life Ins. Co. v. Ellwell, 111 Mich. 689; Princeton Savings Bank v. Martin, 53 N. J. Eq. 463-465; Underwood v. Patrick, 94 Fed. Rep. 468. Zoll v. Carnahan, 83 Mo. 35, is in point by analogy. We hold that the payments of interest made by the Scott Investment Company and by Carey did not prevent the statute from running in favor of the defendant.

III. It is insisted by the appellant, in the second place, that the case is taken out of the statute by the credit Goffe, the trustee, put on the note, of the proceeds arising from the foreclosure sale of the land. The trustee, it is claimed, was the agent of both the mortgagor and mortgagee, and for certain purposes he was; not for that one, however. It was his duty to protect the interests of both parties in the performance of his office and he was liable to either for damages resulting from his misfeasance. Sherwood v. Saxton, 63 Mo. 78. We do not find in the deed of trust any clause authorizing the trustee to enter a credit on the note of the proceeds of sale in case of foreclosure, but such an act was in the scope of his legal authority. To say that he was empowered by Williams to make such a credit on the latter's behalf, or that it was contemplated or ex-

pected he should do so when the deed of trust was executed, would be, in our estimation, a very strained deduction. Notes secured by deeds of trust are commonly paid and the trustee not called on to act; often the land passes from the mortgagor before the debt falls due, under an agreement by the purchaser to assume and pay the incumbrance, as happened here. Williams had no control over the trustee, whose agency, as far as it went, was irrevocable. It is going too far then, we think, to hold the trustee first named, or his possible successors in the persons of different sheriffs, was or were empowered or appointed by the mortgagor to bind him at any subsequent date by crediting the proceeds of a foreclosure on the note. As has well been said, it is not the indorsement of a credit but the payment that operates as a renewal of a promise and removes the bar of the statute of limitations. Curtis v. Nash, 88 Maine 476. The party relying on a payment to stop the statute must not only establish that it was made, but made by the authority of the defendant. Murdock v. Waterman, 27 L. R. A. 418; Bender v. Blessing, 36 N. Y. Sup. 162. "Part payment does not take a debt out of the statute unless made under such circumstances as to warrant the inference that the debtor thereby recognized the debt and signified his willingness to pay it." 1 Wood on Limitations, sec. 99. The payments must be made by or with the consent of the payor. Gardner v. Early, 78 Mo. App. 346; Phillips v. Mahan, 52 Mo. 197. If credits are entered by the holder, without the knowledge or consent of the payor, they are ineffective to check the statute. Goddard v. Williamson, Admr., 72 Mo. 131; Loewer v. Haug, 20 Mo. App. 163. The prima facie showing, from the fact that the credits were entered when it was against Regan's interest to do so, is overcome by the positive proof that the defendant had nothing to do with them and knew nothing about them.

The credit made by the trustee, instead of being the result

of a payment directed by Williams expressly or by necessary implication, was made *in invitum*. It was a collection enforced by foreclosing the security.

The question we are considering has been several times passed on by the courts and we believe, with one exception, the judgment was that such an application by the trustee or mortgagee of the money obtained by sale did not stop the statute. It was so held by this court in Leach v. Asher, 20 Mo. App. 656. The Kansas City Court of Appeals ruled differently in Bender v. Markle, 37 Mo. App. 234, without noticing the previous case. These opposing decisions were commented on by the Supreme Court of Nebraska in a controversy as to the effect of such a credit by the trustee in a deed of trust on lands in Missouri. The proposition is ably discussed in that opinion and the view of this court adopted on the ground, "that such payment was not a voluntary one on the part of Carr (the mortgagor) but one made *in invitum* and by operation of law." Moffitt v. Carr, 48 Neb. 403. To the same purport is the impressive voice of the Supreme Court of Massachusetts in a recent case. The opinion says: "The ground upon which a part payment is held to take a case out of the statute is, that such payment is a voluntary admission by the debtor that the debt is then due, which raises a new promise by implication to pay it or the balance. To have this effect, it must be such an acknowledgment as reasonably leads to the inference that the debtor intended to renew his promise of payment. Roscoe v. Hale, 7 Gray, 274; Stoddard v. Doane, 7 Gray, 387; Richardson v. Thomas, 13 Gray, 381.

In the case at bar, the plaintiff executed a mortgage in which he gave to the mortgagee a power to sell the estate and to appropriate the proceeds to the payment of the mortgage debt. But this can not fairly be construed as an authority to the mortgagee to make a new promise on behalf of the mortgagor

to pay the debt, so as to avoid the statute of limitations.   At the time of the sale, the plaintiff had no interest in the property.   He had no right to the proceeds of the sale.   The money which, it is claimed, was applied in part payment of the note, was not his money.   It would be applied by law to the extinguishment *pro tanto* of his debt, but the application was not under his control and involved no action of his mind.   It does not appear that he had any knowledge of the sale.   It is absurd to say that the facts in this case would fairly lead to the inference that the plaintiff intended to renew his promise to pay the note."   Campbell v. Baldwin, 130 Mass. 199.   It is noteworthy that the law in Massachusetts and Nebraska is, that a sale by a pledgee of collateral security and the application of the money in part payment of the debt will toll the statute. But the Supreme Courts of those States did not think such instances analogous to this one, which they likened rather to transactions in which credits are given for dividends declared by an assignee, that are always held not to stop the course of the statute in favor of the debtor.   Marienthal v. Mosler, 16 Ohio St. 566; Stoddard v. Doane, 7 Gray, 387; Pickett v. King, 34 Barb. 193; Roosevelt v. Mark, 6 John. Ch. 266; Lights Estate, 136 Penn. 211.   Involuntary payments are, we believe, usually held not to take the case out of the statute.   Whitney v. Chambers, 17 Neb. 90; Roscoe v. Hale, 7 Gray, 274; Stoddard v. Doane, 7 Gray, 387; Battle v. Battle, 21 S. E. 177. In Hughes v. Boone, 114 N. C. 54, it was ruled that a partial payment of a judgment made on execution would not interrupt the running of the statute.   It is held that the credit is applied by the assignee as a legal duty and not by direction of the assignor.   So it is of the credit by a trustee or mortgagee.   The proposition that such an act by either affects the statute as to the mortgagor, is incompatible with the principle on which payments are given suspensive effect.   This principle as stated

is, that the payments, whether made by the mortgagor in person or by his accredited deputy, are a recognition by him of his debt and a tacit promise to discharge it. The reasoning which deduces such a conclusion from the credit made by the trustee or mortgagee is extremely artificial, in fact opposed to common knowledge. Is it consistent with the ordinary conduct of men to think that Williams desired or empowered Goffe to bind him to pay this note by the credit which the latter indorsed?

The decisions have gone quite far enough towards defeating the purpose of the limitation law. Woonsocket v. Ballou, 1 L. R. A. 555. The inhospitable reception accorded by the courts to the two great legislative policies embodied in the statutes of limitations and of frauds has often provoked regret, and a disposition more favorable to them has supervened. We have no inclination to encroach further on the limitation law or create fresh exceptions to it and rule, therefore, that the credit, made by Goffe, does not impair the defense of the statute and affirm the judgment. All concur.